COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Willis and Annunziata
Argued at Alexandria, Virginia


ALAN KENNETH ABRAHAM
                                        OPINION BY
v.    Record No. 2272-98-4      JUDGE JERE M. H. WILLIS, JR.
                                      MARCH 21, 2000
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                      Frank A. Hoss, Jr., Judge

          William A. Boge (Anthony J. Corizzi;
          William A. Boge, P.C., on brief), for
          appellant.

          Eugene Murphy, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     On appeal from his convictions of robbery, in violation of

Code § 18.2-58; abduction, in violation of Code § 18.2-48;

carjacking, in violation of Code § 18.2-58.1; and capital

murder, in violation of Code § 18.2-31, Alan Kenneth Abraham

contends (1) that the evidence was insufficient to support the

convictions, (2) that the trial court erred in refusing to

instruct the jury on voluntary manslaughter, (3) that the trial

court erred in refusing a proffered jury instruction on

voluntary intoxication, and (4) that the trial court erred in

denying his motion to exclude certain witnesses summoned by the

Commonwealth in violation of Code § 19.2-267.  Finding no error,

we affirm the judgment of the trial court.

## I.  Facts

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom."  Martin v. Commonwealth, 4 Va. App. 438, 443, 404 S.E.2d 384, 387 (1991).

In May 1997, Abraham and the victim, Joe Allen, lived in the home of Val Ensor.  Allen was a drug dealer and had sold drugs to Abraham.  For several days prior to the murder, Allen had demanded money owed him by Abraham and Abraham had made excuses for not paying.  On May 20, 1997, Abraham drove to a credit union, ostensibly to get the money.  Allen followed in his own vehicle.

In fact, Abraham had no account at the credit union.  While Allen waited in the parking lot, Abraham entered the back seat of Allen's car.  He began striking Allen with a metal rod. Witnesses attempted to stop the attack, but Abraham pushed Allen into the passenger seat of the car, jumped into the front seat, and drove away.  A few minutes later, he pulled into a cul-de-sac and parked the car in front of some townhouses.

One of the townhouse residents saw Abraham get out of the car and walk away.  Allen attempted unsuccessfully to exit the vehicle.  The resident approached the vehicle, but Abraham returned and said he was taking Allen to the hospital.  The resident testified that Abraham wore a red vest, which belonged

-

to Allen. As Abraham drove away, another resident saw him again striking Allen with the metal rod.

Robert Ray, who had observed the beating in the cul-de-sac, followed Abraham. Abraham drove to another courtyard, where he got out of the car, grabbed something from the back seat, and ran away. Allen was taken to the hospital, where he subsequently died as a result of the beating.

After running from the car, Abraham broke into a home and stole some clothing. He abandoned Allen's vest in a shed and hid his own clothes under a deck. Abraham then called a friend to pick him up and take him to Ronald Cameron's house. That night, unbeknownst to Cameron, Abraham slept in Cameron's recreational vehicle. The next day, Abraham returned home, where he was arrested.

The jury convicted Abraham of robbery, carjacking, abduction, and capital murder, and he was sentenced to life imprisonment for the murder, plus sixty years suspended for the other crimes.

## II. Sufficiency of the Evidence (Robbery, Carjacking, Abduction)

Abraham contends that the evidence was insufficient to support his convictions of robbery, carjacking, and abduction. He argues that the Commonwealth failed to prove that he had the requisite intent to commit these crimes.

-

"A conviction for robbery requires proof beyond a reasonable doubt that the defendant . . . took property from the victim by force, threats, or violence, and that the intent to steal co-existed with the act of force."  Pugliese v. Commonwealth, 16 Va. App. 82, 92, 428 S.E.2d 16, 24 (1993).  A conviction for abduction in connection with a robbery requires proof of a detention "greater than the restraint that is intrinsic in a robbery."  Cardwell v. Commonwealth, 248 Va. 501, 511, 450 S.E.2d 146, 152 (1994).  "[T]he carjacking provision is . . . confined by the same limitations which apply to robbery.  Thus, the requisite violence or intimidation must precede or be concomitant with the taking."  Bell v. Commonwealth, 21 Va. App. 693, 701, 467 S.E.2d 289, 293 (1996).

"Intent in fact is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements."  Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977).  "Intent may, and often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact."  Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).

Abraham beat Allen and thereafter took Allen's vest.  He knew that Allen wore the vest when conducting drug deals and that it often contained drugs or cash.  Abraham took Allen's car after beating and subduing Allen.  The scope and duration of

-

Allen's detention clearly exceeded what was necessary to commit the robbery of his personal property and the theft of his car. Abraham continued to attack Allen after committing the robbery, after abducting Allen, and after taking the car.

Thus, the record supports the jury's finding that Abraham acted with the requisite intent in committing robbery, abduction, and carjacking.

### III.  Sufficiency of the Evidence (Capital Murder)

Abraham next contends that the evidence was insufficient to support his conviction of capital murder.  He argues that he was not properly convicted of any predicate offense that would sustain the conviction.  Code § 18.2-31 states, in relevant part:

> The following offenses shall constitute capital murder, punishable as a Class 1 felony:
>
> *       *       *       *       *       *       *
>
> 4.  The willful, deliberate, and premeditated killing of any person in the commission of robbery or attempted robbery
> . . . .

Id.  Abraham was convicted of both abduction and robbery, and we affirm those convictions.  Thus, because he was guilty of the requisite predicate offenses, the evidence was sufficient to support the capital murder conviction.

-

### IV.   Voluntary Manslaughter Instruction

Abraham contends that the trial court erred in refusing to instruct the jury on the elements of voluntary manslaughter.  He argues that such an instruction was warranted because he initially attacked Allen only after Allen threatened him.  However, Abraham continued to attack and beat Allen long after the initial blows, after he took Allen's property, after he abducted Allen, and after his attack rendered Allen helpless.  The evidence was insufficient to raise an issue whether Abraham was provoked by passion, not malice, into killing Allen.  See Belton v. Commonwealth, 200 Va. 5, 9, 104 S.E.2d 1, 4 (1958).

### V.   Voluntary Intoxication Instruction

Abraham contends that he was entitled to a jury instruction on voluntary intoxication, because he had used cocaine prior to the attack.  He argues that the evidence was sufficient to show that "'he was so intoxicated as to render him incapable of any willful, deliberate and premeditated act[s].'"  Waye v. Commonwealth, 219 Va. 683, 698, 251 S.E.2d 202, 211, cert. denied, 442 U.S. 924 (1979).  The evidence disclosed that Abraham consumed cocaine before and after the attack.  The evidence showed clearly, however, that he was not so intoxicated that he could not form the requisite intent to commit the crimes.

Abraham was able to operate a vehicle before and after the attack.  He spoke coherently with the victim before the attack.

-

He spoke coherently with witnesses during and after the attack. He was able to sneak into the victim's car, to evade attempts by witnesses to stop the attack, and to hide from authorities after the attack.  His testimony at trial showed that he was aware of the events that occurred before, during, and after the attack. "All of these actions suggest that he was fully in command of his faculties and acted with deliberation.  Nothing in the evidence suggests that he was so intoxicated as to be unable to form the requisite intent to commit premeditated murder."  Lilly v. Commonwealth, 255 Va. 558, 579, 499 S.E.2d 522, 536-37, rev'd on other grounds, 527 U.S. 116 (1999).

VI.  Motion to Exclude Commonwealth's Witnesses

Abraham contends that the trial court erred in allowing certain of the Commonwealth's witnesses to testify.  He argues that the Commonwealth summoned these witnesses, but then failed to file their names and addresses with the clerk as required by statute, thus denying him required notification that they would testify.

Code § 19.2-267, which permits the issuance of summonses by the Commonwealth's Attorney, requires that the prosecutor "shall at the time of issuance, file with the clerk of court the names and addresses of such witnesses."  Code § 19.2-267.  Abraham argues that violation of this statute bars the witness' testimony.  The statute provides no such remedy.

-

> "While violations of state procedural
> statutes are viewed with disfavor . . .
> neither the Virginia Supreme Court nor the
> legislature has adopted an exclusionary rule
> for such violations . . . where no
> deprivation of the defendant's
> constitutional rights occurred."

West v. Commonwealth, 16 Va. App. 679, 692, 432 S.E.2d 730, 738

(1993) (citations omitted).  Further,

> [n]othing in Code § 19.2-267 prohibits
> the Commonwealth's witnesses from testifying
> nor is there any suggestion in the statute
> that such a remedy was intended by the
> legislature.  [Abraham]'s substantive rights
> were not affected by the Commonwealth's
> failure to file the information at the time
> of the issuance of the summons.

Caccioppo v. Commonwealth, 20 Va. App. 534, 538, 458 S.E.2d 592,

594 (1995).

Abraham failed to show prejudice from the lack of

notification.  At trial, his counsel stated, "[t]here have been

a number of witnesses we had anticipated were going to testify

for the Commonwealth for which return of service of subpoena has

not been placed in the file."  (Emphasis added).  Thus, the

trial court did not abuse its discretion by refusing to bar the

witnesses' testimony.

The judgment of the trial court is affirmed.

Affirmed.

-