COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Kelsey and Senior Judge Willis
Argued at Chesapeake, Virginia


AUBREY DWIGHT JONES, JR.

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1201-08-1                      JUDGE ROBERT J. HUMPHREYS
                                                    FEBRUARY 3, 2009

COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                          Wilford Taylor, Jr., Judge

            Charles E. Haden for appellant.

            Craig W. Stallard, Assistant Attorney General (Robert F.
            McDonnell, Attorney General, on brief), for appellee.


        Aubrey Dwight Jones, Jr. ("Jones") appeals his convictions for burglary, in violation of

Code § 18.2-91, conspiracy to commit burglary, in violation of Code § 18.2-22, and wearing

body armor while committing a crime, in violation of Code § 18.2-287.2.  He argues that the

evidence was insufficient to convict him of any of those crimes.  For the following reasons, we

disagree, and affirm his convictions.

        When considering a challenge that the evidence presented at trial is insufficient, we

"presume the judgment of the trial court to be correct" and reverse only if the trial court's

decision is "plainly wrong or without evidence to support it."  Davis v. Commonwealth, 39

Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002).  We do not "substitute our judgment for that of

the trier of fact."  Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002).

"Instead, the relevant question is whether, after viewing the evidence in the light most favorable

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id.

## A.  Burglary

Jones was convicted of burglarizing Jermaine Outlaw's ("Outlaw") apartment. Jones argues that the evidence was insufficient to convict him of burglary because the Commonwealth failed to prove 1) that he committed a breaking and 2) that he intended to commit an assault and battery on Outlaw when he entered the apartment. At oral argument, Jones also argued that he could not be convicted of burglary because his entry into the home was consensual.

Jones's first argument is meritless because, under Code § 18.2-91, the Commonwealth was not required to prove that Jones committed a breaking. Code § 18.2-91 states, in pertinent part: "if any person commits any of the acts mentioned in § 18.2-89 or § 18.2-90 with intent to commit assault and battery, he shall be guilty of statutory burglary." Code § 18.2-90 provides:

> If any person in the nighttime enters without breaking or in the daytime breaks and enters or enters and conceals himself in a dwelling house . . . he shall be deemed guilty of statutory burglary . . . .

Code § 18.2-90 only requires a breaking if the entry occurs during the daytime. Jones entered the apartment in the nighttime, at 2:00 a.m. Because Jones entered the apartment in the nighttime, the Commonwealth was not required to prove that he committed a breaking.

Jones's claim that the Commonwealth failed to prove that he intended to commit assault and battery when he entered the apartment is also meritless. "An assault and battery is the unlawful touching of another." Perkins v. Commonwealth, 31 Va. App. 326, 330, 523 S.E.2d 512, 513 (2000).

> "Intent . . . is the purpose formed in a person's mind, which may be shown by the circumstances surrounding the offense, including the person's conduct and his statements." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "Intent may, and often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).

Abraham v. Commonwealth, 32 Va. App. 22, 27, 526 S.E.2d 277, 279 (2000).

Jones argues that the trial court failed to adequately consider his statement to the police that he went to Outlaw's apartment merely intending to seek an apology. While that was the explanation Jones gave to the police, the factfinder may discount a suspect's "self-serving explanation as a mere effort at 'lying to conceal his guilt.'" Dugger v. Commonwealth, 40 Va. App. 586, 594 n.2, 580 S.E.2d 477, 481 n.2 (2003) (quoting Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001)). The factfinder may even find such statements "'probative to show he is trying to conceal his guilt, and thus is evidence of his guilt.'" Id. (quoting Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002)).

The evidence proved that Jones met with Catherine Callahan ("Callahan"), who was upset because Outlaw had called her a bitch. Jones then went to Outlaw's apartment wearing body armor and carrying brass knuckles and a gun. He brought Sheldon Parker ("Parker") with him. Parker was carrying an extendable baton. Jones stood in Outlaw's apartment, banging on his bedroom door yelling, "Come out you bitch." When Outlaw did not respond, Jones kicked down the bedroom door. Finding an empty room and an open window, Jones left the apartment, jumping the railing on the porch as he left. When he returned, he told one of Outlaw's roommates to tell the police that they had been "chilling in the house watching TV." The trial court found that Jones went to the house "to do more than get an apology," that he intended to commit assault and battery. In light of the circumstances surrounding the incident, as well as Jones's actions at the apartment, it was reasonable for the trial court to reach that conclusion.

- 3 -

Finally, Jones argues that he could not be convicted of burglary because he had permission to enter the apartment. At common law, one who was "invited" to enter a dwelling could not be convicted of burglary. That requirement stemmed from the "breaking" element of common law burglary. As discussed above, statutory burglary only requires the Commonwealth to prove entry, as opposed to breaking and entering. In Johns v. Commonwealth, 10 Va. App. 283, 392 S.E.2d 487 (1990), we held that this type of "consent" defense does not apply to statutory burglary. We explained, "it would be an impeachment of the common sense of mankind to say that . . . a thief who enters . . . with intent to steal does so with the owner's consent and upon his invitation." Id. at 287, 392 S.E.2d at 489; see also Clark v. Commonwealth, 22 Va. App. 673, 677-78, 472 S.E.2d 663, 664-65 (1996). Given our holdings in Johns and Clark, it is irrelevant whether Jones entered the apartment with the owner's consent.

B. Conspiracy to Commit Burglary

Jones argues that the evidence was insufficient to convict him of conspiracy because the Commonwealth failed to prove an agreement between Jones, Callahan, and Parker.

Code § 18.2-22 makes it a crime to "conspire, confederate or combine with another, either within or without this Commonwealth, to commit a felony within this Commonwealth." "Conspiracy is defined as 'an agreement between two or more persons by some concerted action to commit an offense.'" Wright v. Commonwealth, 224 Va. 502, 505, 297 S.E.2d 711, 713 (1982) (quoting Falden v. Commonwealth, 167 Va. 542, 544, 189 S.E. 326, 327 (1937)). "The Commonwealth may prove the existence of a conspiratorial agreement by circumstantial evidence and need not prove an explicit agreement." Gray v. Commonwealth, 30 Va. App. 725, 736, 519 S.E.2d 825, 830 (1999), aff'd, 260 Va. 675, 537 S.E.2d 862 (2000). Thus, "a conspiracy may be inferred from the overt actions of the parties . . . ." McQuinn v. Commonwealth, 19 Va. App. 418, 425, 451 S.E.2d 704, 708 (1994).

As discussed above, the evidence proved that Jones went to the apartment intending to commit burglary. Thus, the only remaining question is whether he agreed to do so with Callahan and Parker beforehand. The evidence is sufficient to prove the existence of that agreement.

On the day of the incident, Jones, Parker, and Callahan met and discussed Callahan's argument with Outlaw. It is apparent that they reached an agreement at that meeting because Jones told an officer that he went to Outlaw's apartment at Callahan's "direction." Furthermore, their actions at the apartment were indicative of a pre-designed plan. When they arrived at the apartment, Callahan went to the door first while Jones and Parker waited outside. Upon entering, she walked through the apartment, apparently on somewhat of a scouting mission. While in the apartment she told Jeremy Blackburn ("Blackburn"), one of Outlaw's roommates, that, "if anything was going to happen tonight, [he is] not to worry about it, it didn't have anything to do with [him]." That statement clearly demonstrates that she knew that something was about to happen. If that something was lawful, i.e. if she truly intended only to seek an apology, it would have been unusual for her to warn Blackburn ahead of time. Callahan then brought Parker and Jones into the apartment and led them directly to Outlaw's bedroom. From that evidence, the trial court could reasonably have concluded that Jones, Callahan, and Parker had previously agreed to go to Outlaw's apartment and commit a felony.

### C. Body Armor

Finally, Jones argues that the evidence was insufficient to prove that he wore body armor during the commission of his crime. He claims that the Commonwealth failed to sufficiently prove that the vest he wore was "body armor designed to diminish the effect of the impact of a bullet or projectile" as is required by Code § 18.2-287.2.

Code § 18.2-287.2 states:

> Any person who, while committing a crime of violence as defined in § 18.2-288(2) or a felony violation of § 18.2-248 or subdivision

(a) 2 or 3 of § 18.2-248.1, has in his possession a firearm or knife and is wearing body armor designed to diminish the effect of the impact of a bullet or projectile shall be guilty of a Class 4 felony.

At trial, two officers testified regarding the vest worn by Jones. Officer Willie Owens testified twice that the vest was a "bullet proof vest." Jones did not object to Officer Owens's characterization of the vest as "bullet proof" and did not challenge that characterization on cross-examination. Detective Dickson testified about a conversation that he had with Jones about the vest. Detective Dickson testified that he asked Jones, "do you always have all of the weapons and always wear *body armor*?" Jones responded, "Yes, because of my job." The trial court was entitled to rely on Officer Owens's uncontradicted testimony that the vest was "bullet proof" and Jones's statement that the vest was "body armor." As such, the court could have reasonably concluded that the vest was "body armor designed to diminish the effect of the impact of a bullet or projectile."[1]

For the foregoing reasons, we hold that the evidence was sufficient to convict Jones of his crimes. Thus, we affirm the decision of the trial court.

Affirmed.

---

[1] The court was also entitled to base its decision on its personal review of the vest, as it was an exhibit in the case.