COURT OF APPEALS OF VIRGINIA

Present:    Judges Huff, Athey and White
Argued by videoconference

THOMAS JOE BRAXTON, III

MEMORANDUM OPINION* BY
v.        Record No. 0179-22-3        JUDGE GLEN A. HUFF
                                      FEBRUARY 28, 2023

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF HENRY COUNTY
David V. Williams, Judge

Matthew S.T. Clark for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General
(Jason S. Miyares, Attorney General, on brief), for appellee.

Following a bench trial, the Henry County Circuit Court (the "trial court") convicted

Thomas Joe Braxton, III ("appellant") of attempted capital murder of a law enforcement officer,

in violation of Code §§ 18.2-31(6) and 18.2-26, use of a firearm in the commission of a felony

(second or subsequent offense), in violation of Code § 18.2-53.1, and possession of heroin with

the intent to distribute, in violation of Code § 18.2-248(C).  On appeal, appellant challenges the

sufficiency of the evidence only as to his convictions for attempted capital murder and

possession of heroin with the intent to distribute.  He argues the evidence was insufficient to

prove the requisite element of intent for each of those offenses.  This Court disagrees and affirms

appellant's convictions.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

## I. BACKGROUND

This Court recounts the facts "in the light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In doing so, this Court discards any evidence presented by appellant that conflicts with the Commonwealth's evidence and regards as true all credible evidence favorable to the Commonwealth and all reasonable inferences drawn therefrom. *Gerald*, 295 Va. at 473; *Parks v. Commonwealth*, 221 Va. 492, 498 (1980).

On January 1, 2020, at approximately 9:38 p.m., appellant drove a black Toyota pickup truck past the stationary patrol cars of on-duty police officers Michael Panos and Jason Griffith. As appellant passed by, Officer Panos saw that the tag light on the pickup truck was not illuminated.[1] He began following appellant's vehicle and attempted to initiate a traffic stop. But as soon as Officer Panos activated the patrol car's lights and siren, appellant accelerated instead of slowing down. The ensuing vehicle chase was captured by the dash camera in the patrol car.

During the pursuit, appellant's vehicle swerved around multiple other cars travelling in the same direction and crossed over into the oncoming traffic lane when clear of cars. Despite traveling at a speed in significant excess of the speed limit and weaving between lanes, appellant did not strike any other vehicles or objects he passed, even when driving across a narrow bridge and making a right-hand turn past a minivan at a stop sign. Appellant eventually entered the parking lot of an apartment complex—only a few houses away from where he lived—in Henry County. Without parking, appellant jumped out of the driver's side door and began fleeing on

---

[1] On the date of the offense, failure to have the rear license plate illuminated was a violation of Code § 46-1013(B) and a valid reason for the police to initiate a traffic stop. Subsequently, on July 1, 2020, the General Assembly prohibited traffic stops based on this violation. 2020 Va. Acts Spec. Sess. I ch. 45, 51.

foot. The unoccupied truck continued to roll forward slowly before veering off to the right into a wooded area.

Officer Panos continued to chase appellant on foot. As he rounded the corner of one of the houses, he saw appellant running across an open grassy area towards a metal chain link fence. Officer Panos estimated the height of the fence at seven-and-a-half feet. He heard the fence rattle and saw appellant stop, crouch down, and then stand up again, turning around to face Officer Panos who was approximately 15 to 20 feet away from appellant.

Appellant began shooting directly at Officer Panos, who heard a loud "pop," saw a "muzzle flash," and saw the ground in front of him explode with debris that struck his vest. Before he could unholster his own weapon, Officer Panos "heard two more pops and saw a muzzle flash." As Officer Griffith rounded the corner, he heard a gunshot and saw a muzzle flash from where appellant was standing near the fence. Both officers then began shooting at appellant.

During this exchange, a bullet from appellant's firearm struck Officer Panos in the left arm just above his elbow and another bullet grazed the top of his head. Appellant was struck with bullets from the officers' weapons, after which Officer Griffith was able to handcuff him and secure his firearm. Officer Griffith then started tending to Officer Panos' wounds. The foot chase and shootout were recorded by both officers' body-worn cameras.

Shortly thereafter, other police officers and agents arrived in response to radio calls of "shots fired" and "officer down." Officer Griffith assisted those officers in collecting evidence from the scene, including 29 shell casings, appellant's firearm—a Taurus .45 caliber, semi-automatic pistol—and both his and Officer Panos' firearms. At trial, Special Agent Billy McCraw of the Virginia State Police testified that nine of the shell casings he recovered were ".45 caliber cartridge casing[s]" and testing confirmed they had been fired from appellant's gun.

Special Agent McCraw also recovered a "pair of gray cargo pants" that had been cut off appellant at the scene in order to treat his gunshot wounds. Inside a pocket of those pants was a "Crown Royal bag" containing "nine Ziploc bags" of "off-white rocks" which lab results confirmed as heroin. In the same pocket, next to the Crown Royal bag, was a folded-over "bundle" of U.S. currency totaling $363 in paper bills. Appellant's wallet contained 16 one-dollar bills and three pennies.

While the police were tending Officer Panos' and appellant's wounds, appellant's wife arrived on scene from their home directly behind the chain link fence. Upon her arrival, appellant started denying that he had a gun and that it was two other "black guys" who were getting away because the police had wrongfully arrested appellant. Subsequently, appellant's wife told one of the officers that appellant had been with two of his friends earlier that night and that he was not supposed to be the one driving the truck. Yet, Officers Panos and Griffith had observed appellant driving the black pickup truck and saw no other persons either in the truck or with appellant when he ran to the fence and began shooting.

Appellant was airlifted to a hospital and treated for his injuries, namely, gunshot wounds to his thighs and buttocks. Samples of his blood and urine were tested for medical purposes. A drug test of the urine yielded positive results for amphetamine, cannabinoid, cocaine, opiates, buprenorphine, and 6-acetylmorphine.[2] At trial, both parties stipulated that one of the substances

---

[2] Appellant's hospital records include the following note in connection with the drug testing of his urine:

> This drug testing is for medical treatment only. The results are presumptive, based only on screening methods, and they have not been confirmed by a second independent chemical method. Analysis was performed as non-forensic testing and these results should be used only by healthcare providers to render diagnosis or treatment, or to monitor progress of medical conditions.

for which appellant tested positive—"referred to as 6-Methylmorphine"—is "a metabolite of heroin."

On January 17, 2021—more than two weeks after the shooting and appellant's arrest—Special Agents Richard Conley and Matt Wade of the Virginia State Police interviewed appellant at the Henry County Sheriff's Office about the events of January 1.[3] After waiving his *Miranda* rights, appellant initially claimed that he was with a "buddy"—Posey Hairston—on the evening of January 1, 2020, and that it was Posey who drove the truck to the apartment complex because appellant was "too fucked up" on heroin and crystal meth to drive.[4] He also claimed that both he and Posey jumped out of the driver's side door of the truck at the same time and ran together from the police. He described Posey as a black male about the same height and age as appellant.

Appellant stated he heard shots fired while he and Posey were running but insisted he did not shoot the gun at all, and it was Posey who shot at the police. Although appellant advised the agents that Posey's fingerprints would not be on the gun because Posey was wearing gloves, he also admitted that his fingerprints were likely on the gun and magazine but not the bullets because he had touched the gun while in the truck.

When Special Agent Conley explained that the video evidence contradicted appellant's story and suggested that appellant's actions were the result of him being under the influence of drugs, appellant claimed he "d[id]n't remember none of that shit." He continued to assert that he didn't remember driving the truck or shooting at the police even when Special Agent Conley

---

[3] A written summary of that two-and-a-half hour interview was submitted to the court upon stipulation by both parties that it was complete and accurate. It was later introduced into evidence without objection.

[4] Appellant also stated that the truck belonged to his friend Brent Wagoner who had let him borrow the truck on the evening of January 1, 2020. In fact, Brent Wagoner had reported the truck stolen.

asked how he could remember the alleged details about Posey but not his own actions recorded on video.

Eventually, appellant asked the agents how he could "get outta this mess," and they advised him to simply tell the truth. When the agents told appellant they knew he had not been telling them the truth at the start of the interview, appellant responded "I was gonna see if y'all did." Appellant then admitted that a couple weeks prior to the shooting, he had bought the firearm at issue from a "white guy named Adam" who had stolen the gun "from somebody's house." Appellant stated he wanted the gun for "protection" and he paid for the gun with cash and drugs. He acknowledged that he knew his prior convictions barred him from legally possessing a firearm.

Appellant further admitted that he was driving the truck when the officers turned on their lights to stop him. He stated he "freaked out" because he knew he was illegally possessing a firearm and drugs, and then drove off "like a dumbass" with the intent to get home to his wife. Regarding the drugs found in his clothing, appellant stated it was all "pre-weighed" heroin and admitted he was addicted to heroin and meth, but claimed he only carries enough drugs to use at one time and then throws the rest away. However, he also told the agents that he is a dealer, as well as a user, because it helps pay for his addiction. He also acknowledged that he had been arrested previously for selling cocaine. As to the incident on January 1, 2020, appellant claimed he thought he had left both the drugs and gun in the truck when he began fleeing on foot.

Appellant initially stated he "didn't even know the gun was loaded," but when asked why he would carry around an unloaded gun for protection, appellant changed his statement to knowing that the gun was loaded but unaware that a bullet was in the chamber because he normally carries the gun without a round in the chamber. He then insisted he fired only two shots, despite the video evidence showing several more, and claimed he did not remember how

the trigger got pulled. Although appellant ultimately offered to write a letter of apology to the wounded officer, he concluded the interview by stating he did not remember shooting at the police and theorizing that his recorded actions and lack of memory must be the result of the drugs he had consumed that evening.

A grand jury indicted appellant in May 2020 for his actions on January 1. After a series of continuances, appellant's bench trial began on August 11, 2021.[5] The only charges tried were attempted capital murder of a law enforcement officer, in violation of Code §§ 18.2-31(6) and 18.2-26, use of a firearm in the commission of a felony (second or subsequent offense), in violation of Code § 18.2-53.1, and possession of heroin with the intent to distribute, in violation of Code § 18.2-248(C).

At the close of the Commonwealth's evidence, appellant moved to strike the evidence as to two of the charges on the grounds that the Commonwealth failed to prove the requisite intent elements. Specifically, he argued the evidence did not prove he possessed the heroin with the intent to distribute, rather than for self-use. He also argued the evidence failed to prove premeditation and deliberation for the attempted capital murder charge because his state of voluntary intoxication precluded him from being able to form that specific intent.

The trial court denied the motion to strike. As to the attempted capital murder charge, the trial court stated that it had conducted research on the defense of voluntary intoxication and reviewed the video footage, all of which indicated appellant had the ability to form the requisite intent. In particular, the trial court explained that:

> the impression [it] got was [appellant] was trying to straighten out a curve and weaving through traffic. . . . [O]n the Smith River Bridge, it's hard to stay in your own lane, much less pass somebody. And then of course [appellant] gets out . . . pointed a

_____

[5] Prior to the start of trial, appellant waived his right to a jury trial and pled guilty to three felony charges: possession of a firearm by a violent felon, eluding police officers, and possession of a firearm while in possession of heroin.

> gun directly at [Officer Panos], looked him in the eyes, fired the shots. . . . According to [appellant], he'd only fired the gun one time, but he's able to shoot a police officer at twenty to twenty-five feet at night, which makes him a pretty good shot.

Moreover, the trial court noted that even though appellant "had some drugs in his system at some point in time, . . . we don't know the extent of it [because] . . . we don't have a toxicologist to say well yeah, this would have rendered a person unconscious or incapable of making an informed decision."

Regarding the possession charge, the trial court found the evidence sufficient to prove an intent to distribute based on the facts that the heroin was pre-packaged in sealed bags next to the $363 and appellant explicitly admitted that he sold drugs to support his own drug use habits. Following the trial court's denial of the motion to strike, the parties immediately delivered their closing arguments along with appellant's renewed motion to strike on the same grounds as previously argued. After hearing argument from both parties, the trial court found "the Commonwealth ha[d] borne its burden of proof" and found appellant "guilty of each of the charges." It sentenced appellant to 65 years' incarceration with 35 years suspended, leaving an active sentence of 30 years.

This appeal followed.

## II. STANDARD OF REVIEW

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). So long as the record provides "evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *Id.* (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "Rather, the relevant

- 8 -

question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (emphasis added) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)).

Like any other factual determination, such as witness credibility, it is the responsibility of the factfinder to determine "whether to reject as unreasonable the hypotheses of innocence advanced by a defendant." *Young v. Commonwealth*, 70 Va. App. 646, 654 (2019) (quoting *Commonwealth v. Moseley*, 293 Va. 455, 464 (2017)). As a result, a factfinder's determination that the evidence "excludes all reasonable hypotheses of innocence . . . is subject to 'revers[al] on appeal only if plainly wrong.'" *Id.* (quoting *Thorne v. Commonwealth*, 66 Va. App. 248, 254 (2016)); *see also Ervin v. Commonwealth*, 57 Va. App. 495, 520 (2011) (en banc) ("[T]he factfinder's rejection of a hypothesis of innocence 'cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion.'" (quoting *Clanton v. Commonwealth*, 53 Va. App. 561, 573 (2009) (en banc))).

In the absence of clear error, this Court defers to the factfinder's resolution of conflicts in the testimony, weight given to the evidence, and reasonable inferences drawn "from basic facts to ultimate facts." *Robinson v. Commonwealth*, 70 Va. App. 509, 513 (2019) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

### III. ANALYSIS

Appellant asserts that the evidence presented at trial was insufficient to support his convictions for attempted capital murder and possession of heroin with the intent to distribute. For both of those charges, appellant argues only that the trial court erred in finding the evidence sufficient to prove the intent elements of those charges: premeditation and intent to distribute, respectively. However, as the Commonwealth correctly points out, appellant's "principal contention is that the trial court simply drew the wrong inferences from the largely undisputed

- 9 -

facts." Therefore, for the following reasons, this Court finds that the evidence supports the trial court's judgments.

### A. Appellant's Conviction for Attempted Capital Murder

Appellant argues the trial court erred in convicting him of the attempted capital murder of Officer Panos because his state of voluntary intoxication rendered him incapable of forming the requisite intent. However, because the evidence presented at trial—including video footage from the officers' dash camera and body-worn cameras—supports appellant's conviction, this Court finds the trial court did not abuse its discretion in rejecting appellant's hypothesis of innocence based on voluntary intoxication.

Appellant was tried for and convicted of attempted capital murder of a law enforcement officer—Officer Panos—pursuant to Code §§ 18.2-26 and 18.2-31(6). Under these statutes, the Commonwealth was required to prove beyond a reasonable doubt that appellant attempted "[t]he willful, deliberate, and premeditated killing of a law-enforcement officer . . . for the purpose of interfering with the performance of his official duties."[6] Code §§ 18.2-26, -31(6). On appeal, appellant contests only whether the evidence established this specific intent. He argues that his voluntary intoxication by heroin and meth prevented him from forming the required "willful, deliberate, and premeditated" intent. Code § 18.2-31(6).

In Virginia, it is well established that voluntary intoxication is generally "not an excuse for any crime." *Tisdale v. Commonwealth*, 65 Va. App. 478, 482 (2015) (quoting *Wright v. Commonwealth*, 234 Va. 627, 629 (1988)). The sole exception recognized by Virginia courts is

---

[6] On the date of the offense, January 1, 2020, Code § 18.2-31 applied to charges of "capital murder." In July 2021, the General Assembly abolished capital murder in Virginia and renamed those crimes in Code § 18.2-31 as "aggravated murder." 2021 Va. Acts Spec. Sess. I chs. 344, 345. This change in title reflects only the change in punishment for first-degree murder, as capital punishment is no longer a permissible penalty. The substantive evidentiary elements of "aggravated murder," however, remain the same between these two versions of the statute.

when one's voluntary intoxication "negate[s] the deliberation and premeditation required for first degree murder[,] . . . thereby reduc[ing] the conviction from first-degree murder to second-degree murder." *Id.* (quoting *Wright*, 234 Va. at 629). In order to negate "the specific intent requisite for capital or first-degree murder," a defendant must show "he was *so greatly intoxicated as to be incapable of deliberation or premeditation." *Id.* (emphasis added) (quoting *Essex v. Commonwealth*, 228 Va. 273, 281 (1984)).

Here, appellant did not present evidence establishing that his alleged level of intoxication reached that threshold. He offered no forensic evidence of a blood test showing the specific amounts of the drugs in his body, nor did he provide any expert testimony from a toxicologist as to the physical or mental effects those drugs could have caused at different levels. The Commonwealth's evidence on its own does not demonstrate appellant lacked the ability to form the requisite intent; rather, as discussed below, it supports the trial court's judgment to the contrary.

In *Abraham v. Commonwealth*, 32 Va. App. 22, 28-29 (2000), this Court found that the defendant's actions, including the ability to operate a vehicle and his attempt to evade the police, demonstrated "he was not so intoxicated that he could not form the requisite intent" to commit premeditated murder, despite his use of cocaine prior to the crime. The Supreme Court made a similar finding in *Lilly v. Commonwealth*, 255 Va. 558, 579, *rev'd on other grounds*, 527 U.S. 116 (1999). There, the defendant "was able to operate an automobile both before and after the murder" and "took steps to deliberately conceal his involvement in the murder." *Id.* The Court concluded that those "actions suggest that [defendant] was fully in command of his faculties and acted with deliberation. Nothing in the evidence suggests that he was so intoxicated as to be unable to form the requisite intent to commit premeditated murder." *Id.*

- 11 -

Appellant's case presents analogous facts: he operated a vehicle with what would be surprising skill and dexterity if he was so intoxicated as to be unable to form specific intent; and he concocted a false narrative—both on scene and during his police interview two weeks later—in a deliberate attempt to place the blame for his own actions on another person not present during the incident. Indeed, appellant's contradictory and inconsistent statements made during the January 17 interview, when he was not intoxicated, support the conclusion that he was capable of forming the requisite intent on January 1. In particular, appellant initially claimed, in a detailed account, that Posey had driven the truck and shot at the police. Yet when confronted with the fact that the video evidence showed appellant as the only individual who took those actions, appellant suddenly claimed he couldn't remember doing those things.

If appellant's memory was so impaired by his drug use that he did not remember leading the police on a high-speed vehicle chase and then shooting at them after continuing to flee on foot, it is difficult to believe that he would remember all the fake details about Posey's alleged actions that same evening. A rational factfinder could conclude that appellant's selective memory was not a coincidence and instead further highlighted his attempt to avoid responsibility for his actions that night. Appellant even told Special Agents Conley and Wade that he had been waiting to see if they knew that his initial statements were untrue before he admitted to having driven the truck and used the firearm.

And although appellant readily admitted to using drugs that evening, it was not until Special Agent Conley expressly asked whether appellant thought the drugs impacted his actions and memory that night that appellant agreed it had to be the drugs.

Therefore, the totality of the evidence at trial merely established that appellant had consumed both heroin and methamphetamine at some point prior to his contact with the police. "Mere intoxication from drugs or alcohol, however, is not sufficient to negate premeditation."

*Fitzgerald v. Commonwealth*, 223 Va. 615, 631 (1982). Appellant failed to present evidence showing that his intoxicated state rose to the required level to render him incapable of forming specific intent. Consequently, this Court finds that the trial court did not abuse its discretion in rejecting appellant's claim that his voluntary intoxication rendered him incapable of forming the intent required by Code § 18.2-31(6).[7]

This Court also finds that the trial court did not err in determining the evidence of intent was sufficient to convict appellant of attempted capital murder. Frankly, the video footage on its own supports the trial court's judgment on this matter. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) (holding that because appellate courts "owe deference to the trial court's interpretation of all of the evidence, including video evidence," this Court reviews video evidence on appeal "not to determine what [it] think[s] happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did").

Those recordings show that, while fleeing from the police in the truck, appellant successfully navigated other cars on narrow roads and turns without causing an accident. After ditching the truck and continuing to flee on foot towards his nearby house, appellant abruptly stopped, turned around to face Officer Panos, and began firing multiple shots at close range, one of which did strike Officer Panos in the left arm. That moment where appellant chose to end his flight and instead shoot at Officer Panos head-on captures the formation of his premeditated intent to kill Officer Panos and thus prevent the officers from arresting him for his illegal

---

[7] *See Lawlor v. Commonwealth*, 285 Va. 187, 230 (2013) (holding that evidence of defendant drinking "*on the day of the offense* is insufficient to establish that he was too intoxicated to form the requisite intent" to commit capital murder (emphasis in original)); *Jenkins v. Commonwealth*, 244 Va. 445, 458 (1992) (finding defendant's claim "to have consumed a substantial quantity of intoxicating beverages during the day of the crimes was insufficient to show that he 'was so intoxicated as to render him incapable of committing a wilful [sic], deliberate, and premeditated act designed to kill' the victims" (quoting *Hatcher v. Commonwealth*, 218 Va. 811, 814 (1978))).

possession of a firearm and heroin. *See Bowling v. Commonwealth*, 12 Va. App. 166, 173 (1991) ("The question of premeditation is a question to be determined by the fact-finder. 'To establish premeditation, the intent to kill need only exist for a moment.'" (quoting *Peterson v. Commonwealth*, 225 Va. 289, 295 (1983))).

Moreover, the additional evidence and witness testimony—including appellant's own admissions—further established appellant's intent. For example, appellant eventually admitted that he fled from the police in the truck because he was high on drugs, possessed more drugs, and was also in possession of a firearm that he knew he was not allowed to have. He claimed his intent at that point was to get home to his wife. However, as indicated by appellant's actions, that intent changed when appellant stopped running, turned around to face Officer Panos, and began firing multiple shots at Officer Panos from only several yards away. Appellant had almost reached his house by that point, but he had not been able to outrun the officers, so he deliberately changed tactics in his continuing attempt to thwart arrest.

This Court, therefore, finds the record contains sufficient evidence to support appellant's conviction for the attempted capital murder of Officer Panos. And this Court cannot say that no rational factfinder could have drawn the same conclusion.

### B. Appellant's Conviction for Possession with the Intent to Distribute

Appellant contends the Commonwealth's evidence was insufficient to prove that he possessed heroin with the specific intent to distribute it rather than consume it for personal use. Because the evidence supports a finding to the contrary, this Court affirms the trial court's judgment.

"Absent a direct admission by the defendant, intent to distribute must necessarily be proved by circumstantial evidence." *Turner v. Commonwealth*, 75 Va. App. 491, 504 (2022) (quoting *Holloway v. Commonwealth*, 57 Va. App. 658, 666 (2011) (en banc)). "While no single

piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'" *Holloway*, 57 Va. App. at 666 (quoting *Derr v. Commonwealth*, 242 Va. 413, 425 (1991)). Consequently, although "Virginia courts have considered a number of factors alone and in combination when determining if an intent to distribute exists," the Commonwealth "need not present evidence of each of the . . . factors" so long as the "totality of the circumstantial evidence . . . exclude[s] the reasonable hypothesis of possession for personal use." *Id.* at 666-67.

Those factors include, but are not limited to, packaging, quantity, presence or absence of drug paraphernalia for personal use, expert testimony, a large amount of money, and paraphernalia consistent with distribution. *Id. Cf. Stanley v. Commonwealth*, 12 Va. App. 867, 869 (1991) (finding "a conviction for possession with the intent to distribute may be upheld even though the quantity of drugs seized is consistent with personal use"). This Court has also recognized that possession of a firearm, considered a "tool of the drug trade," is "a factor indicating an intent to distribute." *Scott v. Commonwealth*, 55 Va. App. 166, 174 (2009). Moreover, concurrent possession of a firearm and controlled substance supports an inference that the possessor had the intent to distribute the drugs. *Id.*

Under the circumstances here, a rational factfinder could conclude that appellant intended to distribute the heroin he possessed. The heroin was pre-packaged into nine individual Ziploc bags, all of which were found in the pocket of appellant's pants directly next to a folded bundle of cash. And it was not merely several dollars, as found separately in appellant's wallet, but rather over $300 in small bills. That evidence indicates that the nine bags of heroin were all that remained from a larger cache appellant had already sold for the substantial amount of money in his pocket.

Appellant also illegally possessed a firearm, allegedly for his own protection, and even admitted that he sells drugs as a source of income to fund his own addiction. In combination with the rest of the evidence, that admission is particularly damning even though appellant did not make any direct statement as to his intent regarding the nine bags of heroin he possessed on January 1, 2020.

Finally, given his admissions of drug addiction and drug dealing, appellant's unsupported claim that he throws away whatever drugs he does not personally consume at one time defies common sense. The trial court, acting as factfinder, did not abuse its discretion in rejecting that self-serving testimony. *See Turner*, 75 Va. App. at 504 (disregarding appellant's claim at trial that his prior admissions of drug-dealing to the police were fabricated); *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) ("In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude the accused is lying to conceal his guilt."). Accordingly, this Court finds that appellant's conviction for this offense is supported by sufficient evidence.

## IV. CONCLUSION

Finding no clear error, this Court defers to the trial court's factual determinations that appellant's voluntary intoxication did not prevent him from forming the intent to kill Officer Panos and that appellant possessed heroin with the intent to distribute it rather than use it for personal consumption. This Court thus finds the evidence sufficient to support appellant's convictions for attempted capital murder and possession of a controlled substance with the intent to distribute. The judgment of the trial court is affirmed.

*Affirmed.*